**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
      Plaintiff - Appellant,

  v.

ALLEN GILL, a/k/a Bam, a/k/a Bam-Bam,
      Defendant - Appellee.

No. 23-6273

## UNITED STATES OF AMERICA'S MOTION FOR SUMMARY REVERSAL

The government hereby moves the Court to summarily reverse the district court's order granting defendant Allen Gill relief under 28 U.S.C. § 2255. *See* 4th Cir. R. 27(f)(1). The court vacated his 18 U.S.C. § 924(j) convictions on the ground that the predicate crimes of violence—VICAR murders under § 1959(a)(1)—are no longer valid because they do not qualify as crimes of violence under § 924(c)(3)(A)'s force clause. Since then, this Court has published three precedential decisions that directly undermine the order below.

First, the district court held that it could not consider whether generic VICAR murder qualifies as a "crime of violence" and that it needed to "look through" each VICAR murder to the underlying state crimes and ask whether *those* crimes qualify. But in *United States v. Thomas*, 87 F.4th 267 (4th Cir. 2023), this Court held that a court may consider whether the "generic [VICAR] offense standing alone can satisfy

1

the crime-of-violence requirements" and that there is "no need to 'look through' the [VICAR] offense to its state-law predicates." *Id.* at 271, 275.

Second, when looking through each VICAR murder to Gill's underlying state crimes, the district court held that his Maryland murders do not qualify as crimes of violence because Maryland's murder statutes are both overbroad and indivisible. But in *United States v. Ortiz-Orellana*, 90 F.4th 689 (4th Cir. 2024), this Court held the exact opposite. It held that Maryland's first-degree murder statute is "divisible" and that Maryland first-degree "premeditated" murder—which is a predicate underlying each of Gill's VICAR murders—"qualifies as a 'crime of violence.'" *Id.* at 704.

Third, had the district court asked whether generic VICAR murder is a crime of violence, it would have been bound by this Court's clear "yes" in *United States v. Tipton*, 95 F.4th 831, 847 (4th Cir. 2024) (holding that "VICAR murder necessarily requires the use of violent force and thereby satisfies the § 924(c) force clause").

Each of these precedents directly undermines the district court's disposition. As such, summary reversal is appropriate.

## I.     Statutory Framework

This appeal turns on whether Gill's § 924(j) convictions are predicated on a valid "crime of violence." Section 924(j) punishes any "person who, in the course of a violation of subsection (c), causes the death of [another] through the use of a firearm," where "the killing is a murder." *Lora v. United States*, 143 S. Ct. 1713,

1715 (2023) (quoting § 924(j)(1)). And, as relevant, a person violates subsection (c) when "he 'possesses' a firearm 'in furtherance of' a crime of violence." *United States v. Ashley*, 606 F.3d 135, 141 (4th Cir. 2010) (quoting § 924(c)(1)(A)).

When Gill was convicted, "crime of violence" was defined as a felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(A)–(B). Part (A) of that definition is called the "force clause," whereas part (B) is called the "residual clause." *United States v. McNeal*, 818 F.3d 141, 151–52 (4th Cir. 2016). Today, only the force clause remains. *United States v. Khweis*, 971 F.3d 453, 464 (4th Cir. 2020) (explaining that after *United States v. Davis*, 139 S. Ct. 2319 (2019), struck down the residual clause, a "predicate crime now must qualify as a crime of violence under the definition in Section 924(c)(3)(A), often referred to as the 'force clause'").

Under 28 U.S.C. § 2255, a district court may vacate a § 924(j) conviction if it is "not supported by a valid predicate offense." *United States v. Graham*, 67 F.4th 218, 221 (4th Cir. 2023). But when the conviction has at least "one valid" predicate, it "remains sound." *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021); *see also United States v. Draven*, 77 F.4th 307, 318 (4th Cir. 2023) ("Because we have concluded that [one offense] remains a valid predicate, we need not reach the validity

of [the] second predicate . . . to affirm [the] § 924(j) conviction."); *United States v. Green*, 67 F.4th 657, 671 (4th Cir. 2023) (stating that a § 924(j) conviction "remains legally valid after *Davis*" when one of its predicates is still a "crime of violence").

## II. Relevant Facts and Procedural History

### A. *In 2008, Gill pleads guilty to four offenses and is sentenced.*

In June 2008, Gill waived his right to an indictment and pleaded guilty under a plea agreement to a four-count Information. (ECF Nos. 148, 197-2, 197-3).[1] The Information charged him with one count of conspiring to traffic drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846, and three counts of murder by using a firearm in violation of 18 U.S.C. § 924(j). (ECF No. 197-2).

The Information alleged that the "crime of violence" underlying each § 924(j) count is "murder in aid of racketeering" and that Gill had committed those murders "willfully, deliberately, and with premeditation." (ECF No. 197-2 at 4–6). Although it did not expressly say which state laws the murders violated, the Information said that Gill's racketeering enterprise "engaged in racketeering activity," including "acts involving murder in violation of Maryland Code, Criminal Law, Sections 2-201, 2-204, 2-205, and 2-206." (ECF No. 197-2 at 3). And it alleged that he did the murders for a racketeering purpose, that is, either "in consideration of anything of pecuniary

---

[1] Citations of "ECF No." refer to an electronic case filing in the district court docket for the proceedings below, *United States v. Gill*, No. 1:07-cr-00149-3 (D. Md. filed Mar. 27, 2007).

value from the Latrobe Organization in which [he] had or was seeking a position, or to maintain or increase his position in the Latrobe Organization, an enterprise which affected interstate commerce and engaged in racketeering activity." (*Id.*); *see also Tipton*, 95 F.4th at 847–48 (explaining that murder is committed for a racketeering purpose when it is "committed for a pecuniary purpose or for the purpose of gaining entrance to or maintaining or increasing position in the enterprise").

Gill's plea agreement further underscored that he had committed each murder in a deliberate, premeditated, and willful manner. He agreed that he "belonged to the Latrobe Organization" and "committed acts of violence . . . in furtherance of [it]." (ECF No. 197-3 at 4). He admitted as "elements" of his § 924(j) offenses that he had committed "murder in aid of racketeering" and that he did so "willfully, deliberately, and with premeditation." (ECF No. 197-3 at 1–2). He stipulated to facts about the premeditated murders, including that he (1) "shot and killed Valencia Jones" at the "request and direction" of a co-defendant, (2) "shot and killed" Stewart Staggs when Staggs "refused" his attempt to "rob [him] of his drug money and proceeds," and (3) similarly killed "drug supplier Ramon Santana . . . after stealing his heroin." (ECF No. 197-3 at 4–5). And he acknowledged that the government could have proved those facts at trial "beyond a reasonable doubt." (ECF No. 197-3 at 4).

The parties agreed that USSG § 2A1.1's first-degree murder cross-reference applied and thus that Gill had a base offense level of 43. (ECF No. 197-3 at 5). They also agreed that Gill should be sentenced to 480 months in prison. (*Id.*).

In September 2008, the district court sentenced Gill to 480 months in prison on all four counts of conviction, to be served concurrently. (ECF No. 170). He did not appeal his judgment of conviction.

### B.     *In 2016, Gill collaterally challenges his § 924(j) convictions.*

In June 2016, Gill moved the district court under 28 U.S.C. § 2255 to vacate his § 924(j) convictions on the ground that they do not have a "qualifying crime-of-violence predicate" after *Johnson v. United States*, 576 U.S. 591 (2015) (invalidating § 924(e)(2)(B)'s residual clause). (ECF No. 186 at 11). Gill argued that *Johnson* had effectively invalidated § 924(c)(3)(B)'s residual clause. (ECF No. 186 at 4–9). He then asked the court to hold his case in abeyance pending the decisions in *Sessions v. Dimaya*, 584 U.S. 148 (2018); *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020); and *United States v. Dickerson*, No. 20-6578, 2022 WL 843899 (4th Cir. Mar. 22, 2022) (unpublished). (ECF Nos. 190, 198, 208). The court granted Gill's requests and—except for some periods of time after *Dimaya* and *Taylor* were decided—held this case in abeyance until March 2022. (ECF Nos. 193, 199, 209).

In June 2019, the Supreme Court ruled in *Davis* that § 924(c)(3)(B)'s residual clause is "unconstitutionally vague." 139 S. Ct. at 2336. "Post-*Davis*, an underlying

'crime of violence' must satisfy the force (or elements) clause of § 924(c)(3)(A)."
*United States v. Jackson*, 32 F.4th 278, 283 (4th Cir. 2022).

Gill filed a supplemental § 2255 motion, arguing that the district court should vacate his § 924(j) convictions after *Davis*. (ECF No. 197-1). Conceding that the Information had predicated each conviction in part on "both Maryland first degree murder (Md. Code, Crim. Law § 2-201) and Maryland second degree murder (Md. Code, Crim. Law § 2-204) as the 'crime of violence,'"[2] he said that the court "must assume that [his] § 924(j) convictions were predicated on [only] the least serious of the two offenses — which is Maryland second degree murder in aid of racketeering." (ECF No. 197-1 at 7–8). He argued that "Maryland second degree murder in aid of racketeering" did not satisfy the "force clause" because it can be committed with "a reckless mens rea" and "even lesser mens rea than recklessness via felony murder." (ECF No. 197-1 at 10). Citing circuit caselaw, he said that the force clause "requires a higher degree of mens rea than recklessness." (ECF No. 197-1 at 8–9).

Gill later filed a second supplemental § 2255 motion (ECF No. 233-1), which he then corrected and refiled (ECF No. 238). He noted again that "the [I]nformation to which [he] pled guilty charges both Maryland first degree murder (Md. Code,

---

[2] Gill attached to his supplemental motion copies of the Information he had pleaded guilty to (ECF No. 197-2) and his plea agreement (ECF No. 197-3). Before jumping to his underlying Maryland murder offenses, Gill acknowledged that the Information had charged a VICAR offense as the predicate "crime of violence" for each § 924(j) count. (ECF No. 197-1 at 2, 7; *see also* ECF No. 197-2 at 4–6).

Crim. Law § 2-201) in aid of racketeering and Maryland second degree murder (Md. Code, Crim. Law § 2-204) in aid of racketeering in violation of 18 U.S.C. § 1959 (VICAR) as the alleged 'crime of violence'" underlying each § 924(j) conviction. (ECF No. 238 at 2–3). But now he argued that it made "no difference" which offense is viewed as the predicate offense because "neither offense is a § 924(c) 'crime of violence' under the force clause." (ECF No. 238 at 3).[3]

Gill observed first that both Maryland first-degree and second-degree murder statutes "encompass felony murder." (ECF No. 238 at 1). He observed next that the Supreme Court had held in *Borden v. United States*, 141 S. Ct. 1817 (2021) (plurality opinion), that any "offense which can be committed with the reckless use of physical force or less categorically fails to qualify as a 'violent felony' under the force clause of the ACCA." (ECF No. 238 at 13). And he observed that this Court had extended *Borden* to § 924(c)(3)(A)'s force clause and established that "[f]elony murder cannot qualify as a 'crime of violence' because it requires only the mens rea necessary to attempt or complete the underlying felony," which is "not more than recklessness." (ECF No. 238 at 14 (quoting *Jackson*, 32 F.4th at 285)). From those premises, he

---

[3] Gill conceded that in *United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021), this Court "held that if a defendant admits to facts in a guilty plea that support a § 924(c) offense based on a valid predicate, the § 924(c) conviction remains valid even if the defendant also admitted to facts supporting a § 924(c) offense based on an invalid predicate." (ECF No. 238 at 3 n.3). Thus, when there are multiple "crime of violence" predicates for a § 924(j) conviction, only one of them needs to be valid for the conviction to be valid. *See supra* at pp. 3–4.

concluded that both Maryland murder statutes are "overbroad" and therefore not categorically a "crime of violence." (ECF No. 238 at 15).

Gill nonetheless recognized that even an overbroad statute can set forth a valid "crime of violence" when it is "divisible" into "multiple" offenses and at least one of them satisfies § 924(c)(3)(A)'s force clause. (ECF No. 238 at 4–5). But he argued that neither Maryland murder statute is "divisible between premeditated murder and felony murder." (ECF No. 238 at 13, 16). Despite acknowledging that Maryland's first-degree murder statute proscribes "premeditated murder" and "felony murder" in distinct subsections, he claimed that they are "alternate means" of committing an "*indivisible* offense." (ECF No. 238 at 8). He then argued at length that Maryland's first-degree and second-degree murder statutes are both "indivisible." (ECF No. 238 at 8–13, 15–17). But he did not dispute that if Maryland premeditated murder is a distinct offense, it would qualify as a "crime of violence." (*See* ECF No. 238).

The government timely opposed Gill's § 2255 motion. (ECF No. 247; *see also* ECF Nos. 245, 246). We noted that the "crime of violence" underlying each § 924(j) conviction is the "federal offense of murder in aid of racketeering" as "codified in 18 U.S.C. § 1959(a)(1)." (ECF No. 247 at 13). We argued that the district court could consider the "generic" VICAR offense as the "crime of violence" without looking through it to the "underlying state predicate offense(s)." (*Id.*). And we explained that generic VICAR murder, especially premeditated murder, is "a 'crime of violence'

9

under § 924(c)(3)(A)'s force clause." (ECF No. 247 at 14 (citing cases)). We opposed Gill's contention that the court needed to "look beyond the generic definition of the enumerated VICAR [murder] offense to the elements of the state crime underlying the VICAR charge." (ECF No. 247 at 15).

In the alternative, the government argued that if the district court looked to "Maryland first and second-degree murder" as the "underlying predicate offenses," it still should deny Gill relief because Maryland's first-degree murder statute is "divisible" and that statute's premeditated murder offense—which is a "deliberate, premeditated, and willful killing," *see* Md. Code Ann., Crim. Law § 2-201(a)(1)— qualifies as a "crime of violence." (ECF No. 247 at 15–16). We observed that the Information and plea agreement both showed that Gill had committed the murders underlying his § 924(j) convictions "willfully, deliberately, and with premeditation." (ECF No. 247 at 20–21). And we argued that Maryland second-degree murder is also a "crime of violence." (ECF No. 247 at 21–25).

In reply, Gill opposed the government's argument that the "crime of violence" underlying each § 924(j) conviction is generic federal murder as enumerated in the VICAR statute. He claimed that this Court "made plain" in *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), that "a VICAR offense is only a 'crime of violence' when the underlying state offense itself qualifies as a § 924(c) 'crime of violence.'" (ECF No. 258 at 9). But he did not deny that if the district court could consider

10

generic VICAR murder as the predicate crime of violence, his § 924(j) convictions would still be valid. (*See id.*).

Gill also opposed the government's contention that Maryland's first-degree murder statute is "divisible between premeditated murder and felony murder." (ECF No. 258 at 10). But he did not dispute that if the statute is divisible, his convictions would still be valid because Maryland first-degree premeditated murder is a "crime of violence" under the force clause. (*See* ECF No. 258 at 10–15).

### C. The district court vacates Gill's § 924(j) convictions.

By an order, dated January 20, 2023, the district court granted Gill relief under § 2255 by vacating his § 924(j) convictions. (ECF No. 267). The court decided that it did not need to resentence him on his drug-conspiracy conviction and thus left that conviction's concurrent 480-month sentence "in full force and effect." (*Id.*).

In a separate opinion, the district court explained why it had concluded that Gill's § 924(j) convictions are no longer valid. (ECF No. 266). It found first that the "crime of violence" underlying each conviction is "murder in aid of racketeering," also known as "VICAR murder," in violation of § 1959(a)(1). (ECF No. 266 at 5–6).[4] And it noted that because *Davis* had invalidated § 924(c)(3)(B)'s residual clause,

---

[4] The opinion's internal pagination at the bottom of each page differs from the CM/ECF-generated pagination at the top of each page. The government's pinpoint citations for ECF No. 266 refer to the CM/ECF-generated pagination.

the VICAR murders needed to satisfy § 924(c)(3)(A)'s force clause to qualify as a "crime of violence." (ECF No. 266 at 7).

The district court held that to determine whether Gill's § 924(j) convictions are predicated on a valid "crime of violence," it needed to look through his "VICAR murders" to the "federal or state offense underlying [them]." (ECF No. 266 at 19). Citing *United States v. Manley*, 52 F.4th 143, 148 (4th Cir. 2022), the court rejected the government's counterargument that it could consider whether "generic" VICAR murder on its own qualifies as a "crime of violence." (ECF No. 266 at 20).

After agreeing with Gill that his "VICAR murders are predicated on murder in violation of Maryland law," the district court held that Maryland's first-degree and second-degree murder statutes are "not categorically a 'crime of violence'" because they include "felony murder." (ECF No. 266 at 27). It explained that felony murder "does not satisfy *Borden*" because it "requires only the mens rea necessary to attempt or complete the underlying felony," which is "not more than recklessness." (*Id.* (quoting *Jackson*, 32 F.4th at 285)). The court also agreed with Gill that Maryland's murder statutes are not only overbroad, but also "indivisible." (*Id.*). So it concluded that his § 924(j) convictions needed to be vacated. (ECF No. 266 at 31).

On January 23, 2023, the district court entered an amended judgment, striking Gill's § 924(j) convictions and leaving his other conviction and sentence intact. (ECF No. 268).

This timely government appeal follows. (ECF No. 271). This Court held the appeal in abeyance pending its decision in *Ortiz-Orellana*. Order, filed July 20, 2023. On January 10, 2024, it decided *Ortiz-Orellana*, holding that Maryland's first-degree murder statute is divisible and that VICAR murder based on an underlying Maryland first-degree premeditated murder is a crime of violence. 90 F.4th at 704.

### III.    Analysis in Support of Summary Reversal

This Court should summarily reverse the district court's order vacating Gill's § 924(j) convictions because it manifestly erred in three respects—each of which requires reversal. First, the district court erred by refusing to consider whether generic VICAR murder is a crime of violence and holding that it was required to perform the kind of "look through" analysis that this Court in *Thomas* held is not required. Second, the district court erred by holding that Gill's underlying Maryland murder offenses are not crimes of violence because Maryland's murder statutes are overbroad and indivisible; in *Ortiz-Orellana*, this Court held exactly the opposite, namely that Maryland first-degree murder is divisible and that Maryland first-degree premeditated murder satisfies the force clause. Finally, the district court erred by holding that Gill's convictions are not supported by crimes of violence. Under *Tipton* and *Ortiz-Orellana*, both generic VICAR murder and Gill's underlying Maryland first-degree murders—which he admitted to committing "willfully, deliberately, and with premeditation"—are crimes of violence under § 924(c)(3)(A)'s force clause. So

this Court should not only vacate the district court's order, but it should also remand with instructions to reinstate Gill's convictions and deny his § 2255 motion.

### A. The district court erred by vacating Gill's § 924(j) convictions.

The district court vacated Gill's § 924(j) convictions on the ground that they are predicated on "VICAR murder" offenses that no longer "qualify as a 'crime of violence.'" (ECF No. 266 at 31; *see also* ECF No. 258 at 7–8 (Gill conceding that "VICAR murders" are the predicate crimes of violence)). This Court reviews "de novo" both the "analytical framework" the district court used in deciding "whether VICAR [murder] qualifies as a crime of violence" and the court's decision that the offense is not a "crime of violence" under § 924(c)(3)(A)'s force clause. *Thomas*, 87 F.4th at 271; *see also Tipton*, 95 F.4th at 843.

The district court erred first by rejecting the government's argument that it could consider whether "generic" VICAR murder constitutes a "crime of violence." (ECF No. 266 at 20). It claimed that this Court had "rejected" that very argument in *Manley*. (*Id.*). But *Manley* simply said that when a VICAR offense is "premised on" a state crime, it is "proper to examine whether a conviction under the [state] statute would be a crime of violence." 52 F.4th at 147–48. And *Manley* immediately jumped through the generic VICAR offense to the underlying state crime because this Court had already "held" that the state crime "meets the criteria for a crime of violence." *Id.* at 148. *Manley* did not suggest that it would have been improper to examine the

generic VICAR offense instead. *See id.* Indeed, in *Thomas*, this Court held that when a VICAR offense is the predicate offense, courts may consider whether the "generic [VICAR] offense standing alone can satisfy the crime-of-violence requirements." 87 F.4th at 275. The district court should be summarily reversed for this reason alone. It misunderstood and misapplied *Manley*. And because it did not have the benefit of this Court's later decision in *Thomas*, it mistakenly believed it had to apply the "look through" approach that Gill was advocating. So it erred by vacating his convictions without considering whether generic VICAR murder is a "crime of violence."

But that is not all. The district court's order must also be reversed because it has been wholly undermined by *Ortiz-Orellana*. In vacating Gill's convictions, the court only considered whether his underlying Maryland murders qualify as crimes of violence. After deciding that Maryland's murder statutes are "not categorically a 'crime of violence'" because they include "felony murder," the court erred next by holding that the statutes are also "indivisible," such that no Maryland murder is a "crime of violence." (ECF No. 266 at 27). But the court plainly misconstrued Maryland's first-degree murder statute. It believed that the statute defines a "single, indivisible crime." (ECF No. 266 at 25). But this Court held in *Ortiz-Orellana* that the statute is "divisible," that premeditated murder and felony murder are distinct offenses under it, and that Maryland first-degree premeditated murder is a "crime of violence." 90 F.4th at 703–04. So the district court manifestly erred again.

These first two errors—under *Thomas* and *Ortiz-Orellana*—each provide a sufficient reason to reverse the district court and remand for further proceedings. But there is still more. If the court did not commit those errors, it would have considered whether (1) generic VICAR murder or (2) Gill's underlying Maryland first-degree murders qualify as a crime of violence. Both questions have only one correct answer under this Court's precedent: *Yes*. Because the "outcome" of any further proceedings below is "readily apparent," there is no need to "remand for that purpose." *Bigelow v. Virginia*, 421 U.S. 809, 827 (1975). This Court should instead "resolve [these legal questions] in the first instance." *Green*, 67 F.4th at 666 (resolving "purely legal questions" in the first instance when the "outcome is readily apparent").

In *Tipton*, this Court held that "VICAR murder satisfies both the force clause of § 924(c)(3)(A) and *Borden*'s mens rea requirement" and therefore "constitutes a § 924(c) 'crime of violence.'" 95 F.4th at 848. It explained that because a VICAR murder "must intentionally be 'committed for a pecuniary purpose or for the purpose of gaining entrance to or maintaining or increasing position in the enterprise,'" the murder "must be an intentional murder." *Id.* at 847–48 (citation omitted). And an intentional murder "necessarily requires the use of violent force," which satisfies both the force clause and *Borden*. *Id.* at 848. Thus, the VICAR murders underlying Gill's § 924(j) convictions are crimes of violence, rendering the convictions valid. *Id.* Because the district court would have manifestly erred under *Tipton* if it had

held—or were to hold on remand—that the VICAR murders are not crimes of violence, this Court should apply *Tipton* itself and instruct the court below to reinstate the convictions and deny Gill's motion to vacate them.

In *Ortiz-Orellana*, this Court held that a "deliberate, premeditated, and willful killing" under Maryland's first-degree murder statute also "qualifies as a 'crime of violence.'" 90 F.4th at 704; *see also* Md. Code, Crim. Law § 2-201(a)(1) (providing that any "deliberate, premeditated, and willful killing" is murder in the first degree). And Maryland first-degree premeditated murder is one of the state crimes underlying each of Gill's VICAR murders. The Information he pleaded guilty to charged that he had committed the murder underlying each § 924(j) offense "willfully, deliberately, and with premeditation." (ECF No. 197-2 at 4–6). And in pleading guilty to those offenses, one of the "elements of the offense" he admitted to was that he did those murders "willfully, deliberately, and with premeditation." (ECF No. 197-3 at 1–2). So the district court would also have erred under *Ortiz-Orellana* if it had held—or were to hold on remand—that his Maryland murders are not crimes of violence.

The district court's legal errors would normally require remanding for further proceedings in light of this Court's intervening precedents. But further proceedings are not necessary here because there is only one possible outcome: Gill's § 924(j) convictions must stand because the underlying VICAR murder offenses are crimes of violence under § 924(c)(3)(A)'s force clause. *See Tipton*, 95 F.4th at 848; *Ortiz-*

*Orellana*, 90 F.4th at 704. So in summarily reversing the district court, this Court should remand with instructions to reinstate the § 924(j) convictions and deny Gill's § 2255 motion to vacate them.

B.   *There is no need to further delay this 8-year-old § 2255 case.*

Instead of delaying Gill's case further, this Court should grant summary reversal. There is no way for Gill to escape from the controlling decisions in *Tipton*, *Ortiz-Orellana*, and *Thomas*. He cannot deny, for example, that the crime of violence underlying each § 924(j) conviction is VICAR murder. He repeatedly conceded below that it is VICAR murder. (*See, e.g.*, ECF No. 197-1 at 2, 7; ECF No. 238 at 2–3; ECF No. 258 at 1–3, 6–8, 16, 19). So *Tipton* and *Thomas* are binding here.

Nor can Gill deny that Maryland first-degree murder is one of the state crimes underlying each VICAR murder. He repeatedly conceded below that it is. (*See, e.g.*, ECF No. 197-1 at 7 ("Maryland first degree murder"); ECF No. 238 at 1 ("Maryland first degree murder in aid of racketeering"); ECF No. 258 at 8 (calling it "crystal clear" that "VICAR Maryland first degree murder" constitutes a "purported 'crime of violence' underlying the § 924(j) counts"). So *Ortiz-Orellana* is also binding.

Nor can Gill deny that he committed the Maryland murder underlying each of his VICAR murders with premeditation. In pleading guilty to the § 924(j) offenses, he admitted as "elements of the offense" that he murdered Valencia Jones, Stewart Staggs, and Ramon Santana "willfully, deliberately, and with premeditation." (ECF

No. 197-2 at 4–6; ECF No. 197-3 at 1–2). Generally, the "accuracy and truth" of a defendant's statements in pleading guilty are "conclusively established." *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975) (quotation marks omitted). Thus, any "allegations in a § 2255 motion that directly contradict" those statements are generally considered "palpably incredible" and "patently frivolous." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). So Gill cannot try to get around *Ortiz-Orellana* on the ground that Maryland first-degree premeditated murder is not one of the state offenses underlying his VICAR murder offenses.

Finally, Gill may not argue for the first time on appeal that generic VICAR murder and Maryland first-degree premeditated murder are not crimes of violence. He had every opportunity to raise those arguments below in his § 2255 motions and in response to the government's contention that both offenses are crimes of violence. But he did not do so, thereby waiving them as grounds for § 2255 relief. *E.g.*, *United States v. Herrera-Pagoada*, 14 F.4th 311, 318 (4th Cir. 2021) (holding that defendant was "barred" from making on appeal "arguments" in support of § 2255 relief that he did not raise "before the district court"); *United States v. Dyess*, 730 F.3d 354, 365 (4th Cir. 2013) (citing *United States v. Muth*, 1 F.3d 246, 250 (4th Cir. 1993)). Even if he had not waived them, they would be barred by this Court's recent precedents.

In sum, it is manifest that no substantial argument that can be raised in support of the district court's challenged order. So it should be summarily reversed.

## IV. Conclusion

The Court should (1) summarily reverse the district court's order granting Gill § 2255 relief and vacating his § 924(j) convictions and (2) remand with instructions to reinstate those convictions and deny Gill's motion to vacate them.

**WHEREFORE,** the government respectfully asks the Court to grant this motion for summary reversal under Local Rule 27(f)(1).[5]

Respectfully submitted,

Erek L. Barron
United States Attorney

/s/ David C. Bornstein
Assistant United States Attorney
Deputy Chief, Appellate Division
United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

---

[5] The government informed Gill's counsel that we intended to file this motion, and Gill's counsel responded that he intends to oppose it.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION
AND TYPEFACE AND TYPE-STYLE REQUIREMENTS**

This motion complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains <u>4,978</u> words.

This motion also complies with the typeface and type-style requirements in Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  April 8, 2024.                          /s/ David C. Bornstein
                                                Assistant United States Attorney